In re COMPLETE DRYWALL CON-
TRACTING, INC., Bankrupt.

Leonard P. GOLDBERGER, Successor
Trustee in Bankruptcy, Plaintiff,

v.

Albert C. BROSS, Jr. and Regina A.
Bross, his wife, Defendants.

Bankruptcy No. 77–1927EG.

United States Bankruptcy Court,
E. D. Pennsylvania.

June 18, 1981.

Melvin Lashner, Adelman & Lavine, Philadelphia, Pa., for plaintiff/trustee, Leonard P. Goldberger.

John M. McAllister, McAllister & Reif, Philadelphia, Pa., for defendant, Albert C. Bross, Jr. and Regina A. Bross, his wife.

Leonard P. Goldberger, Philadelphia, Pa., trustee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue before us is whether certain payments made by an insolvent corporation prior to the filing of its petition in bankruptcy are fraudulent and therefore recoverable by the trustee under § 67(d) or § 70(e) of the Bankruptcy Act ("the Act"). For the reasons stated below, we find that the payments which were made to repay the personal loans or obligations incurred by the defendant, president of the bankrupt corporation were fraudulent and, hence, recoverable under § 70(e). On the other hand, we conclude that those payments made on account of expenses incurred by the bankrupt corporation in the ordinary course of business were valid and not recoverable.

The facts of the instant case are as follows:[1] On November 25, 1977, Complete Drywall Contracting, Inc. ("the bankrupt corporation") filed a petition in bankruptcy under the Act.[2] Prior thereto Albert C. Bross, Jr. ("Bross") was the president, sole shareholder and controlling person of the bankrupt corporation. On November 14, 1979, the trustee filed the instant complaint to recover payments made by Bross out of corporate funds during 1976 and 1977[3] asserting that those payments were fraudulent and therefore recoverable from Bross under § 67(d) and/or § 70(e) of the Act.

Section 70(e)(1) provides:

e. (1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this Act which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act, shall be null and void as against the trustee of such debtor.

Applicable Pennsylvania state law provides:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

Pa.Stat.Ann. tit. 39, § 354 (Purdon).

In the case at bench, Bross has admitted that the bankrupt corporation was insolvent during the time when the above payments were made. Therefore, the question presented is whether the payments made by the bankrupt corporation were made for a fair consideration.

■ Under both Pennsylvania state law[4] and federal law, a managing officer and controlling shareholder of a bankrupt corporation stands in a fiduciary relationship to the bankrupt, stockholders and creditors of the corporation. *See, e. g., Burroughs v. Fields,* 546 F.2d 215 (7th Cir. 1976); *Inland Security Company, Inc. v. Estate of Kirshner,* 382 F.Supp. 338 (W.D.Mo.1974); *Bellis v. Thal,* 373 F.Supp. 120 (E.D.Pa.1974); *Duberstein v. Werner,* 256 F.Supp. 515 (E.D.N.Y.1966). As established by the United States Supreme Court in *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), the fundamental rule with respect to that fiduciary relationship is:

A director is a fiduciary ... So is a dominant or controlling stockholder or group of stockholders ... Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. While the Bankruptcy Act has been superseded by the Bankruptcy Code as of October 1, 1979, the provisions of the Act still govern petitions filed before that date. The Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 403, 92 Stat. 2683 (1978).

3. The payments in question include payments to Industrial Valley Bank in the amount of $3,135.67 on account of a personal loan incurred by Bross; to Fidelity Bank in the amount of $5,780.12 on account of a personal loan incurred by Bross; to Frankford Trust Co. in the amount of $1,016.28 on account of a personal loan incurred by Bross; to Frankford Trust Co. in the amount of $3,442.82 on account of the mortgage obligation on Bross's residence; to Philadelphia Electric Company in the amount of $1,059.75 on account of electricity supplied to Bross's home; to Southhampton Water Authority in the amount of $258.24 on account of water supplied to Bross's home; to the Torresdale Country Club in the amount of $476.30 for Bross's membership dues; and to Bross in the amount of $2,800.00 for rent for his summer home.

4. Pennsylvania law provides:

Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith and with that diligence, care and skill which ordinarily prudent men would exercise under similar circumstances.

Pa.Stat.Ann. tit. 15, § 1408 (Purdon Com.Supp. 1978–79).

interested therein. [Citations omitted.] The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside. While normally that fiduciary obligation is enforceable directly by the corporation, or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee. For that standard of fiduciary obligation is designed for the protection of the entire community of interests in the corporation—creditors as well as stockholders.

*Id.* at 306–07, 60 S.Ct. at 245.

■ In the instant case, accordingly, the burden is on Bross to show that the transactions involved were made in good faith and are fair from the viewpoint of the bankrupt corporation. We conclude that, with respect to the payments made by the bankrupt corporation to repay personal loans incurred by Bross and his wife,[5] Bross has failed to sustain his burden of establishing the fairness of those transactions. At the trial Bross asserted that the bankrupt corporation received fair consideration for those payments. But no evidence was offered to support that bald assertion and, absent such proof, we must conclude that those payments were not for fair consideration and are, therefore, void under Pennsylvania law and § 70(e) of the Bankruptcy Act.

■ With respect to the other payments, however, we conclude that Bross has established that the bankrupt corporation did receive fair consideration for them. Of those other payments, many were for the maintenance of Bross's residence (i. e., payments for the utilities[6] and for the mortgage[7]). Because Bross's residence also served as the place of business of the bankrupt corporation, we conclude that those payments are valid business expenses of the bankrupt corporation and not voidable under § 70(e) of the Act.

■ We conclude that the remaining payments in question (rent for Bross's summer home and Bross's country club dues)[8] were also in exchange for fair consideration received by the bankrupt corporation and are not avoidable. The testimony offered by Bross and by Bross's accountant was that Bross was compensated by the bankrupt corporation for services rendered by him for the corporation in two ways. Bross received a weekly salary of $500, $300 of which he received in cash and $200 of which was placed in an account known as a "loan and exchange" account. It was out of that account that the above payments for rent and country club dues were paid. As further evidence that the money in that account was received by Bross as part of his salary, both Bross and his accountant testified that Bross paid income taxes on the entire $500/week received by him. Furthermore, it does not appear that Bross' salary was excessive given the services performed by him for the bankrupt corporation. Consequently, we conclude that the payments made by the bankrupt corporation to the "loan and exchange" account were for fair consideration and not voidable under Pennsylvania law and § 70(e) of the Act.

■ However, the evidence presented at the trial showed that there was a deficit in the "loan and exchange" account of $2,489 as of the date of the filing of the bankruptcy petition. Since Bross apparently drew more out of that account than even he asserts he was entitled to, we conclude that the trustee is entitled to recover that $2,489 as being a payment which was not given in exchange for fair consideration and thus is

---

**5.** Those payments were the payment to Fidelity Bank of $5,780.12, the payment to Industrial Valley Bank of $3,135.67 and the payment to Frankford Trust of $1,016.28 for a total of $12,421.07.

**6.** Those payments total $1,317.99 ($1,059.75 for electricity and $258.24 for water).

**7.** Those payments total $3,442.82.

**8.** Those payments were for $476.30 for country club dues and $2,800 for rent for the summer home.

voidable under Pennsylvania law and § 70(e) of the Act.

With respect to the arguments of the trustee and the bankrupt corporation based on § 67(d)(2) of the Act, we conclude that an analysis under that section will not result in the avoidance of any more of the above payments. The part of § 67(d)(2) on which the trustee relies states:

> (2) Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent.

Since the test under that section is the same as the test under § 70(e) of the Act and that applied under Pennsylvania law [9] except that § 67(d)(2) contains a one year limitation, we conclude that § 67(d)(2) will not add anything to our analysis of the trustee's rights under § 70(e).

9. Pa.Stat.Ann. tit. 15, § 1408 (Purdon Com. Supp.1978–79).